MURDOCK, Justice
(dissenting).
It would be hard to dispute that the holding of our Court today yields a scheme that, at best, must be considered awkward: A defendant who persuades an appellate court to reverse a permanent injunction will be able to recover “damages” incurred during the relatively brief period at the outset of the litigation during which a preliminary injunction may have been in place (a period sometimes lasting only a few weeks), but will not be able to recover damages for the often much longer period (often extending for many months (11 months in this case)) between the entry of a permanent injunction and the reversal of that injunction on appeal. This, notwithstanding the fact that the nature of the restraint on the defendant’s liberty was exactly the same during both periods. Allowing a defendant to recover no damages for the relatively longer, latter period, but allowing the defendant to “leap-frog” back in time and claim damages for only the relatively shorter period at the outset of the litigation, is a scheme that, I submit, is more than awkward; it is arbitrary and discordant. That the scheme adopted by our Court today could be characterized in either manner suggests that it is not the scheme intended by the drafters of our procedural rules.
More fundamentally, today’s holding fails to reflect the precise nature of the policy reason underlying the requirement that some form of collateral security be posted as a prerequisite to the issuance of a preliminary injunction.
As a general rule, the law presumes that an order or a judgment entered by a trial court is the right course. As a general rule, therefore, the law allows the prevailing party to act upon an order or a judgment without providing some form of collateral “insurance” or “security” to “insure” that the order or judgment is the right course.[4] The only “insurance” or “security” afforded by our system for the purpose of insuring the correctness of a trial court’s ruling is the “security” afforded by the fact that the order or judgment has been entered only after the trial court has conducted a full due-process hearing.
What is it then about a trial court’s judgment granting preliminary injunctive relief that makes it different — that re *1237 quires a preliminary restraint to be accompanied by collateral security to protect against the risk that it was wrongfully entered? It is this: Because the full measure of due process normally available from a trial court has not yet been provided as “security” to protect the defendant against a wrongful restraint, the law insists upon a substitute, i.e., a bond. This “substitute” security, however, is only temporary. Once the full measure of due process available from a trial court is provided, the need for the substitute security is ended and the bond automatically extinguishes. At that juncture, the parties are, in effect, restored to the same position they would have been in had it been possible to conduct the due-process hearing before the preliminary injunction was issued. As this Court explained in Miller v. Wood, 257 Ala. 594, 595, 60 So.2d 353, 354 (1952): “[T]he bond is required as a protection against the abuse of [the] extraordinary process [of interlocutory injunctive relief]”; it protects a defendant’s interests “pending a hearing on the merits.” (Emphasis added.)
Today’s holding necessarily is predicated on the notion that the purpose of a preliminary-injunction bond is simply to protect against the risk that a preliminary restraint will at any point be determined to have been the wrong course, even if that determination is one made in an appeal after the trial court has conducted a full evidentiary hearing and decided to continue the restraint in the form of a permanent injunction. This notion fails to embrace the exact nature of the peculiar risk “insured” against by the bond. If that risk was simply the risk that the preliminary injunction might ultimately be reversed on appeal, our rules logically should not stop with requiring a bond for preliminary injunctions; the rules logically would extend the requirement for a bond to permanent injunctions as well. The reason our rules require the posting of a bond as a prerequisite to the issuance of a preliminary injunction is to insure not just against the risk that the defendant has been wrongfully restrained, but to insure against the peculiar risk that is attendant to the imposition of such a restraint without the benefit of the full measure of due process normally available from a trial court. Once the “security” of a full evi-dentiary hearing has been afforded and the trial court reaffirms its decision as to the restraint at issue, the peculiar risk attendant to the fact that the restraint has been imposed without the benefit of a.full hearing is removed. The hearing, itself, and the resulting order of the trial court ratifies the restraint imposed upon the defendant up to that point. It affords the defendant all the “security” — or due process — to which the defendant is entitled at the trial-court level to assure that the restraint has been proper.
Finally, the issue before us can be viewed from a more mechanical perspective. It is well established that a preliminary injunction is merged by operation of law into a permanent injunction. See, e.g., Smith v. Illinois Bell Tel. Co., 270 U.S. 587, 46 S.Ct. 408, 70 L.Ed. 747 (1926); Peterson v. Brotherhood of Locomotive Firemen & Enginemen, 268 F.2d 567 (7th Cir.1959); and Securities & Exch. Comm’n v. Okin, 137 F.2d 862 (2d Cir.1943). An appeal of the permanent injunction presents to the appellate court only the question of the propriety of the permanent injunction. See generally Smith v. Illinois Bell Tel. Co., 270 U.S. at 588-89, 46 S.Ct. 408 (dismissing the appeal regarding the merits of a preliminary injunction that had been merged into a permanent injunction); Securities & Exch. Comm’n v. Okin, 137 F.2d at 863 (to same effect).
With the extinguishment of the preliminary injunction by virtue of its merger into *1238 the permanent injunction comes the concomitant extinguishment of the bond securing it. I see nothing in the text of the applicable statutes or rules that authorizes this or any court to revive such a bond once it has been extinguished.
The only appellate court case — either state or federal — I have found that is postured similarly to the present case is Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164 (9th Cir.1976). As in the present case, the trial court in Buddy Systems entered a preliminary injunction and subsequently entered a permanent injunction. As in the present case, the defendant appealed the final judgment of the trial court entering the permanent injunction. The appellate court, as in the present case, reversed the permanent injunction. Despite that reversal, the United States Court of Appeals for the Ninth Circuit held that the defendant was not entitled to recover any damages incurred during the period the preliminary-injunction bond was in place because that bond had been extinguished and no longer existed at the time of the appellate court ruling:
“The exoneration [of the bond] was not implicitly reversed by the reversal of the permanent injunction on direct appeal. We recognize that such a reversal provides a basis for finding the preliminary injunction to have been wrongfully issued. Houghton v. Meyer, 208 U.S. 149, 28 S.Ct. 234, 52 L.Ed. 432 (1908). However, wrongful issuance is merely one element of a cause of action on an injunction bond. The bond is still needed....”
545 F.2d at 1169 n. 10 (emphasis added; some citations omitted).
The United States Supreme Court quoted Buddy Systems with approval when it stated as follows in W.R. Grace & Co. v. Local Union 759, International Union of the United Rubber, Cork, Linoleum & Plastic Workers of America, 461 U.S. 757, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983):
“A party injured by the issuance of an injunction later determined to be erroneous has no action for damages in the absence of a bond. Russell v. Farley, 105 U.S. 433, 437 (1882); Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164, 1167-1168 (C.A.9 1976), cert. denied, 431 U.S. 903 (1977).”
461 U.S. at 770 n. 14 (emphasis added). See also Cedar-Al Prods., Inc. v. Chamberlain, 49 Wash.App. 763, 767, 748 P.2d 235, 237 (1987) (quoting with approval the above-quoted language from Buddy Systems, expressly “adopting] the reasoning of the court in Buddy Systems,” and adding that “[a]ny other decision ... would be grossly unfair to the surety who furnishes a bond and who is no longer a party to the case”).
We are pointed to no decision of any appellate court that, on its facts, fairly can be said to stand for the proposition that an eventual appellate court reversal of a permanent injunction serves to revive a preliminary-injunction bond previously extinguished by virtue of the merger of the preliminary injunction into a permanent injunction entered after a full evidentiary hearing. Among the cases discussed in the briefs before us is the decision of the United States Court of Appeals for the Eleventh Circuit in Piambino v. Bailey, 757 F.2d 1112 (11th Cir.1985). Piambino, however, did not entail a permanent injunction that operated to extinguish a preliminary-injunction and the bond securing it, but instead involved an appeal of the preliminary injunction itself. Similarly, in Alabama v. United States Environmental Protection Agency, 925 F.2d 385 (11th Cir.1991), the appeal was of both a preliminary injunction and a permanent injunction, and the preliminary-injunction bond had been *1239 expressly “preserved” by the trial court under the terms of the permanent injunction it had entered.
For its part, Atomic Oil Co. of Oklahoma v. Bardahl Oil Co., 419 F.2d 1097 (10th Cir.1969), may be limited to the factual circumstance of a preliminary injunction entered by the trial court as to 30 states, where the trial court later denied permanent injunctive relief as to 27 of those states. Thus, as to those 27 states, the trial court did not enter a permanent injunction into which its previously issued preliminary injunction merged; instead, as to those states the trial court itself found the preliminary injunction to have been wrongful. Although the appellate court did uphold an award of damages sought by the three states as to which the trial court had entered a permanent injunction, the trial court had required the issuance of a separate bond in relation to its entry of a permanent injunction as to those states.
Finally, in Ex parte Waterjet Systems, Inc., 758 So.2d 505 (Ala.1999), there was no permanent injunction issued by the trial court and, accordingly, this Court did not consider whether an appellate reversal of a permanent injunction operates to revive a preliminary-injunction bond that previously had been extinguished by the merger of the preliminary injunction into a permanent injunction.[5]
Placing substantial reliance upon the opinion of this Court in Bonner v. Lyons, Pipes & Cook, P.C., 26 So.3d 1115 (Ala. 2009), the main opinion takes the position that the reversal of the judgment granting permanent injunctive relief operates as a reversal of that judgment in its entirety. The main opinion reasons that this principle applies in this case to the particular language in the trial court’s final judgment by which the trial court expressly ordered the extinguishment of the preliminary-injunction bond. The extinguishment of the bond, however, was not dependent upon this language in the trial court’s final judgment. Regardless of whether this or any trial court might include language in its order awarding permanent injunctive relief expressly providing that the preliminary-injunction bond be deemed extinguished, such extinguishment typically occurs automatically. It does so — typically and in this particular case — as a function of the limited nature and purpose of the procedural scheme requiring the bond in the first place, as well as the terms of the bond itself read and interpreted in the context of that scheme. See Miller v. Wood, 257 Ala. at 595, 60 So.2d at 354 (“The bond is the contract of the parties executing it, [and] the [rule] prescribes its terms and conditions.... ”).
Based on the foregoing, I respectfully dissent.

. To the contrary, the law typically requires a losing party wishing to stay a judgment to provide collateral security in the form of a bond to insure that the stay of the trial court’s judgment is the right course.

. For that matter, the Waterjet Court had no occasion to, and did not, consider whether an appellate court's reversal of a permanent injunction means that a precursor preliminary injunction was "wrongfully” entered for purposes of recovery on a preliminary-injunction bond.